IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PREM SALES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-CV-141-M-BQ |
| | § | |
| GUANGDONG CHIGO HEATING AND | § | |
| VENTILATION EQUIPMENT CO., LTD., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Guangdong Chigo Heating and Ventilation Equipment Co.,

Ltd.'s (Chigo) Motion to Dismiss and Brief in Support of Motion to Dismiss. ECF Nos. 5, 6.

Chigo moves for dismissal under Federal Rule of Civil Procedure 12(b) for insufficient process

and insufficient service of process. ECF No. 5. Plaintiff Prem Sales, LLC (Prem) filed its response

and brief in support, and Chigo in turn filed its reply. ECF Nos. 7, 8, 9. Chigo's motion is now

ripe for decision. After reviewing the motions, exhibits, and applicable law, the undersigned

recommends that the United States District Judge **DENY** Chigo's Motion to Dismiss. ECF No. 5.

## I.    Procedural History

Prem filed suit against Chigo, a Chinese company, in state court on February 27, 2020.

ECF No. 1-5. Initially, Prem requested service through the Texas Secretary of State pursuant to

§ 17.044 of the Texas Civil Practice and Remedies Code. ECF Nos. 1-6, 1-7. The Secretary

sought to serve Chigo via certified mail, return receipt requested. ECF Nos. 1-8, 1-9. As of May

13, 2020, the Secretary had not received a response. ECF No. 1-9. Prem admits this original

service attempt failed. *See* Pl.'s Br. 4, ECF No. 8 (noting that the Secretary was not able to serve Chigo).

Prem then filed a Motion for Substituted Service requesting leave to serve Chigo electronically.[1] ECF No. 1-11. In conjunction with its motion, Prem submitted two supporting affidavits showing that email had been a reliable form of contact between the parties. ECF Nos. 1-12, 1-13. Prem requested that the service email be sent to four Chigo employees with whom Prem's officers had recently corresponded. ECF No. 1-11. On June 1, 2020, the Lubbock County District Court granted Prem's request and ordered service via email to Chigo's "officers and/or employees." ECF No. 1-14. Prem's counsel sent the electronic service by email and electronic filing manager the same day. ECF Nos. 1-17, 1-18, 1-19. Records from the electronic filing manager, efile.txcourts.gov, show that emails were sent to all four email addresses. ECF No. 1-19, at 6. The records show that one of the four parties opened the electronic filing attachment. *Id.* Chigo subsequently filed its Special Appearance[2] and, subject thereto, its Original Answer on June 19, 2020. ECF No. 1-20. Shortly thereafter Chigo removed this case from Lubbock County District Court to the United States District Court for the Northern District of Texas, Lubbock Division. ECF No. 1.

Chigo filed its Motion to Dismiss and Brief in Support of Motion to Dismiss on July 13, 2020. ECF Nos. 5, 6. Chigo moves for dismissal on two grounds: (1) insufficient process, and (2) insufficient service of process. Def.'s Mot. 1, ECF No. 5 (citing Fed. R. Civ. P. 12(b)(4)–(5)).

---

[1] Having discovered a typographical error in the Original Petition's caption, Prem filed its First Amended Petition the same day. ECF No. 1-10. The Original Petition misspelled Chigo's name, omitting the second "g" in "Guangdong." ECF No. 1-5. To the extent that Chigo argues insufficient service based on this error, the Court does not address this argument because Prem does not contend that service of the Original Petition was successful. *See* Pl.'s Br. 4.

[2] Chigo filed its Special Appearance under Texas Rule of Civil Procedure 120a "for the purpose of objecting to the jurisdiction of the Court" and "defective methods of service." ECF No. 1-20.

Chigo primarily argues that the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters [hereinafter Hague Convention or Convention] preempts inconsistent methods of service under state law and, as the People's Republic of China is a signatory to the Convention and Chigo is a citizen of China, the Convention's service procedures are mandatory in this case. Def.'s Br. 1, ECF No. 6. As such, Chigo argues, because Prem did not serve Chigo under the Hague Convention, Prem's claims must be dismissed "due to insufficient process and insufficient service of process." *Id.* In the alternative, Chigo argues that "even if the Hague Convention did not preempt Plaintiff's service methods, Plaintiff's attempted service in this case is defective under Texas state law." *Id.*

Chigo asks the Court to (1) find that Prem's service methods were insufficient as a matter of law, (2) find that service under the Hague Convention has not been diligently pursued, and (3) dismiss all claims with prejudice as a result of Prem's lack of diligence. *Id.* at 14. In the alternative, Chigo asks the Court to quash Prem's attempted service methods and order Prem to effect service, within a limited time frame, using methods consistent with the Hague Convention. *Id.*

Prem's primary argument in response is that it properly served Chigo in accordance with state and federal law. Pl.'s Br. 5. Prem claims that the United States Supreme Court has held "that the Hague Convention does not preclude substituted service per the forum state's laws." *Id.* at 1. Second, Prem asserts that per Fifth Circuit precedent "email service [is] not prohibited by the Hague Convention." *Id.* Ultimately, Prem claims that "[t]he real test [is] whether service was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* Prem accordingly asks

the Court to deny Chigo's Motion to Dismiss, or in the alternative, quash service and allow Prem to serve Chigo without a deadline. *Id.* at 16–17.

## II.   Background

The United States and China are both signatories to the Hague Convention, a multilateral treaty intended "to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017). The Convention "specifies certain approved methods of service" and preempts methods of service inconsistent with its methods wherever it applies. *Id.*; *accord Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Stated alternatively, service methods set forth in the Convention are mandatory and compliance is required "in all cases to which it applies." *Schlunk*, 486 U.S. at 699.

The Convention provides that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters art. 1, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. Thus, lawful service on an international party's domestic agent, which completes service without the necessity of transmitting documents abroad, does not implicate the Hague Convention. *Schlunk*, 486 U.S. at 696, 706–07. The Convention also does not apply "where the address of the person to be served with the document is not known." Hague Convention art. 1.

"The [Convention's] primary innovation" is the requirement that each member state must "establish a central authority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698 (citing Hague Convention art. 2). The central authority then must serve the documents in accordance with the internal law of the receiving state, or "by a particular method requested by the applicant," provided that such method is compatible with the receiving state's

laws. Hague Convention art. 5. Following service, the central authority must provide the applicant with a certificate of service. *Id.* art. 6. If service is not successful the certificate must list the reasons that prevented service. *Id.*

The Convention specifies alternative forms of service, provided the receiving country does not object to those types of service. Permissible methods include service on "diplomatic or consular agents," service through "consular channels," service on "judicial officers," and direct service "by postal channels." *Id.* art. 8–10. The Convention also allows countries to designate additional methods of service, either unilaterally within their own borders or through agreements with other nations. *Id.* art. 11, 19.

If a plaintiff attempts to serve a foreign defendant through a central authority and the central authority fails to provide a certificate of service, the plaintiff may move for default judgment six months after initiating service. *Id.* art. 15. Under this scenario, rather than granting default judgment, the presiding judge is also authorized to "direct a special method of service" in accordance with the Federal Rules of Civil Procedure. *See* Notes of Advisory Committee on 1993 Amendment to Federal Rule of Civil Procedure 4, subdivision (f)(3).

Receiving states may not refuse service "on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based." Hague Convention art. 13. If a receiving country fails to comply with this rule, "special forms of service" may be authorized. *See* Notes of Advisory Committee on 1993 Amendment to Federal Rule of Civil Procedure 4, subdivision (f)(3).

Finally, the Convention permits courts to enter "any provisional or protective measures" in the "case of urgency." Hague Convention art. 15. Such measures have been interpreted to include

"special forms of service." *See* Notes of Advisory Committee on 1993 Amendment to Federal Rule of Civil Procedure 4, subdivision (f)(3).

## III.    **Discussion**

As set forth above, Chigo seeks dismissal on the grounds of both insufficient process and insufficient service of process. Def.'s Mot. 1. Once a party challenges the form or method of service, the serving party bears the burden of establishing its validity. *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). If the serving party fails to carry its burden the district court may, in its discretion, quash service and dismiss the claim or extend time for obtaining proper service. *See Gartin v. Par Pharm. Cos.*, 289 F. App'x 688, 692 (5th Cir. 2008).

A court cannot exercise jurisdiction over a defendant that is not properly served. *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 906–07 (5th Cir. 1995). Generally, "[t]he adequacy of service of process effectuated prior to removal is governed by the law of the state in which the action was originally filed." *Perez v. L-3 Commc'ns Corp.*, No. EP-06-CA-22-PRM, 2006 WL 1788182, at *2 (W.D. Tex. June 26, 2006) (citing *Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972)). "By virtue of the Supremacy Clause [however,] . . . the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Schlunk*, 486 U.S. at 699. For this reason, Texas courts defer to the Hague Convention in determining what constitutes proper service when transmission of documents abroad is required. *See In Re T.M.E.*, 565 S.W.3d 383, 391–92 (Tex. App.—Texarkana 2018, no pet.) (citation omitted) ("In addition, Texas courts have held that '[t]he Hague Convention preempts any inconsistent methods of service prescribed by Texas law in all cases where the Convention applies.'"); *see also Paradigm Entm't, Inc. v. Video Sys. Co.*, No. Civ.A. 3:99-CV-2004P, 2000

WL 251731, at *4 (N.D. Tex. Mar. 3, 2000) (same). Because Prem concedes its attempt at service via the Texas Secretary of State failed, the Court must examine Prem's efforts to serve Chigo via e-mail in the context of whether the Hague Convention applies and, if so, whether such service comports with the Convention's requirements. Concerning the former question, the answer is a rather straightforward "yes." As to the latter, however, federal courts are split on whether the Convention permits service via email. But after careful review of the cases examining both views, the undersigned finds that on the present record, email service on Chigo is not authorized under the Convention and the Court therefore recommends that the United States District Judge quash Prem's email service.

### A. The Hague Convention applies to this case.

By the Convention's terms there are generally two types of cases where the Convention does not apply: cases where the address of the person to be served is unknown, and cases that do not require the transmission of judicial documents abroad. Hague Convention art. 1. As Chigo correctly points out, neither exclusion applies here.

Prem does not allege that Chigo's address was unknown. *See* ECF No. 1-11, at 2 (Prem references Chigo's business address in the Motion for Substituted Service.). Thus, the only circumstance in which the Hague Convention would not apply is if it did not require the transmission of judicial documents abroad. That is not the case here, despite Prem's assertions to the contrary.

Prem claims "electronic service did not require the transmittal of documents abroad, therefore, the Hague Convention does not apply." Pl.'s Br. 7. In other words, in Prem's view, unless documents are *physically* sent abroad, the Hague Convention does not control the method of service. Prem cites *Schlunk* in support. *Id.* In *Schlunk*, however, the Supreme Court held that

service did not require the transmittal of documents abroad because the international defendant had a domestic subsidiary within the state. 486 U.S. at 707. The Court explained, "Where service on a domestic agent is valid *and complete* under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications." *Id.* (emphasis added). Though *Schlunk* does not discuss physical versus electronic service, the Court is unpersuaded that *Schlunk* stands for the proposition that the Hague Convention applies only where physical paper documents are sent abroad. Assuming email service was otherwise proper, the documents would still be transmitted abroad—even if such transmission was electronic. *See id.* at 700–01 (noting that the Convention applies "'where there are grounds' to transmit a judicial document to a person staying abroad").

Prem next relies on *Schlunk* to assert that "[i]f alternative means to effectuate service exist, compliance with the service requirement under the Hague Convention is not mandatory." Pl.'s Br. 6. Prem again misconstrues *Schlunk*. While it is true that "the internal law of the forum is presumed to determine whether there is occasion for service abroad," *Schlunk*, 486 U.S. at 704, this is not to say that the mere existence of alternative service methods obviate the need to comply with the Convention. As explained above, *Schlunk* did not implicate the Convention because the forum state's laws allowed for *completed service* on the domestic agent—the Court did not base its decision on the mere existence of an alternative method for service under state law, regardless of its terms. More specifically, "the Illinois long-arm statute authorized" the plaintiff to serve the international defendant by substituted service on its domestic subsidiary "without sending documents to Germany." *Id.* at 706. Stated alternatively, the reason the plaintiff could serve pursuant to state law, in a manner not authorized under the Convention, is because *service occurred and was completed in the state*. Because effective service did not require the transmittal of

documents abroad, the Convention did not apply. Thus, it was not the mere fact that other means existed to effectuate service, but rather that the other means did not fall within coverage of the Convention. Here, contrary to *Schlunk*, Prem's attempted service required the transmission of documents abroad—albeit electronically—and therefore the Convention applies.

### B. The Hague Convention does not permit email service on a Chinese defendant.

Having determined that the Hague Convention applies, the Court now turns to whether it authorizes service by email. The Convention's text does not explicitly prohibit email service, nor does it prohibit service by "other means of delivery unknown in the 1960's." *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule 'A'*, 391 F. Supp. 3d 816, 825 (N.D. Ill. 2019). The question, then, is whether the Convention's textual silence permits courts to authorize service by methods not expressly prohibited, e.g., email. Courts have generally approached this issue from two perspectives: (1) examining whether email service is incorporated under Article 10, which permits service through postal channels; or (2) evaluating whether email service is generally consistent with the Hague Convention. While the undersigned finds the latter view more relevant, either approach supports the conclusion that, on the present record, email service on Chigo is not authorized under the Convention. The undersigned therefore recommends that the United States District Judge quash Prem's email service.

Prior to examining these views, however, the Court must first address Prem's claim that in *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 480 (2018) the Fifth Circuit has previously found that the Hague Convention authorizes service by email. For the following reasons the undersigned finds *Nagravision* distinguishable from the facts presented herein.

In *Nagravision*, a Swedish entity filed suit against a Chinese company in the Southern District of Texas. *Id.* at 496–97. The Chinese company initially ignored the lawsuit and the subsequent default judgment. *Id.* at 497. Only when the Swedish firm sought to enforce the judgment in a Hong Kong court did the Chinese company participate in the American suit by seeking relief from default judgment under Federal Rule of Civil Procedure 60(b). *Id.* In rejecting the defendant's challenge, the court stated that the Chinese defendant did "not show[] that [email service] is prohibited by international agreement" and held that "[s]ervice was therefore proper."[3] *Id.* at 498. At first blush, the court's holding arguably implies that service under Federal Rule of Civil Procedure 4(f) does not require compliance with the Convention:

> Overlooking Rule 4(f)(3) entirely, [defendant] argues that the service did not comply with the Hague Convention and Rule 4(f)(1). This argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).

*Id.* (citing *United States v. Real Prop. Known as 200 Acres of Land Near FM 2686 Rio Grande City*, 773 F.3d 654, 659 (5th Cir. 2014)).[4] A review of the underlying district court docket, however, provides important context for the Fifth Circuit's holding.

The Swedish plaintiff initially attempted service under the Hague Convention (and which Prem *has not* done here). *Nagravision SA v. Gotech Int'l Tech. Ltd.*, Civil Action No. 4:15-CV-00403, ECF Nos. 18, 19 (S.D. Tex. Dec. 21, 2015). In accord with the Convention, the plaintiff sent translated documents to the Chinese Central Authority, but the Central Authority failed to serve the defendants after several months. *Id.* at ECF No. 21 (S.D. Tex. Jan. 26, 2015). The

---

[3] The court did not hold that email service was proper under the Hague Convention—rather, the court said that the Chinese defendant did not meet its burden under Rule 60(b) by affirmatively proving that email service violated international agreement. Typically, and as is the case here, the burden is on the plaintiff to prove that email service was proper, including that service did not violate international agreement. *Quinn*, 470 F. App'x at 323.

[4] The cited case is distinguishable—the defendant's address was unknown and thus the Hague Convention did not apply. *Real Prop. Known As 200 Acres of Land Near FM 2686 Rio Grande City*, 773 F.3d at 659.

plaintiff asked the court for leave to serve via email if the Central Authority failed to serve the defendants after eight months. *Id.* Only then did the district court authorize service via email. *Id.* at ECF Nos. 23 (S.D. Tex. Feb. 1, 2016), 24 (S.D. Tex. June 2, 2016). As noted above, Article 15 of the Convention authorizes courts to enter default judgment if the Central Authority fails to provide a certificate of service after six months. Hague Convention art. 15. The Convention also authorizes courts to "direct a special method of service" under the Federal Rules of Civil Procedure. *See* Notes of Advisory Committee on 1993 Amendment to Federal Rule of Civil Procedure 4, subdivision (f)(3). The *Nagravision* district court's determination that service was proper is therefore supported by Article 15 of the Convention, which authorized the court to order alternative service under Federal Rule of Civil Procedure 4(f)(3). Thus, in that context, email service was not prohibited by international agreement, as the court concluded. *See Nagravision SA*, 882 F.3d at 498.

With this background in mind, the Court finds that *Nagravision* does not stand for the general proposition that email service on a Chinese defendant is permitted under the Convention, and therefore turns to the question of the propriety of email service under the Convention's terms on such a defendant.

### *1. China's objection to Article 10 authorizing service by "postal channels" most likely includes attempted service by email.*

In determining whether the Hague Convention authorizes email service on Chinese defendants, the Court must bear in mind the Supreme Court's general construct that the Convention "pre-empts inconsistent methods of service . . . [wherever] it applies." *Schlunk*, 486 U.S. at 699. At least one district court has construed this guidance to mean "[t]he Supreme Court has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text." *Luxottica Grp. S.p.A.*, 391 F. Supp. 3d at 825. Another district court,

however, took the opposite approach, reasoning that because "the Hague Convention does not specifically preclude e-mail and publication service," a court "remains free to order alternative means of service where a signatory nation has not expressly objected to those means." *Karsten Mfg. Corp. v. Store*, CASE NO. 18-61624-CIV-ALTONAGA, 2018 WL 8060707, at \*1 (S.D. Fla. July 26, 2018). Other courts have simply analyzed electronic mail specifically under Article 10 of the Convention, which authorizes service through "postal channels." *See, e.g.*, *James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, Civil No. SA-16-cv-00463-OLG, 2018 WL 4688778, at \*6 (W.D. Tex. July 5, 2018); *Compass Bank v. Katz*, 287 F.R.D. 392, 396–97 (S.D. Tex. 2012). China is one of many signatories to the Hague Convention that has expressly objected to the service provisions in Article 10, including service through postal mail. The Court will first examine Article 10 and its potential application to email service.

Several courts analyzing email service under Article 10 have reasoned that an objection to postal channels includes email service. *See, e.g.*, *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, Case No. 19-cv-01167-JST, 2020 WL 5036085, at \*7–8 (N.D. Cal. Aug. 18, 2020) (criticizing district courts that concluded China's Article 10 objection does not encompass email and holding that "unless an exception to the Convention applies, service by e-mail on the China-based defendants" is prohibited); *Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*, Civil Action No. 19-608, 2019 WL 7049504, at \*4 (W.D. Pa. Dec. 23, 2019) (holding that in light of the country's article 10 objections, "the Court cannot conclude that Turkey has consented to service by means not listed in Article 10, including email"); *Graphic Styles/Styles Int'l LLC v. Men's Wear Creations*, 99 F. Supp. 3d 519, 523 n.3 (E.D. Pa. 2015) (noting, without holding, "[g]iven that Article 10(a) does not permit service by 'postal channels' it cannot be stretched to permit service by e-mail"); *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014)

(finding that the Hague Convention "does not allow service through e-mail upon an individual located in Switzerland" because Switzerland objected to Article 10); *Compass Bank*, 287 F.R.D. at 396–97 (stating that Mexico's objection to Article 10 means that "service through Mexico's Central Authority is the exclusive method of service of process on parties in Mexico under the Hague Convention" and therefore denying plaintiff's request to serve Mexican defendant via email); *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*, 266 F.R.D. 305, 308 (D.S.D. 2009) (denying motion for email service after examining Article 10 and noting that the United Kingdom "appear[s] to have endorsed a formal method of service with regard to the Hague Convention"); *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *1–2 (N.D. Cal. May 13, 2008) (finding no reason to distinguish service by email or facsimile from Germany's Article 10 objection to "postal channels" and requiring service of German defendant pursuant to the Hague Convention). Despite this apparent weight of authority, however, it appears to be the minority view.

Other courts analyzing email service under Article 10 have held that email service is not prohibited unless a nation specifically objects to service by email. *See, e.g.*, *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, Case No. 18-cv-00297-BAS-BGS, 2019 WL 246562, at *2 (S.D. Cal. Jan. 17, 2019) (finding that China's Article 10 objection does not include email and allowing email service under Federal Rule of Civil Procedure 4(f) because it is not "prohibited by international agreement"); *WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co.*, Case No. 5:18-CV-04543-EJD, 2019 WL 8810350, at *2 (N.D. Cal. Jan. 10, 2019) ("Given the weight of authority [in the Northern District of California], the court finds that China's objection to Article 10 regarding postal service does not mean that email service is 'prohibited by international agreement'" under Federal Rule 4(f).); *FKA Distrib. Co. v. Yisi Tech. Co.*, Case No. 17-CV-10226, 2017 WL 4129538, at *1 (E.D.

Mich. Sept. 19, 2017) (noting that "several courts have held that the Hague Convention allows service by email"); *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016) ("[A] country's objection to Article 10 does not constitute an express rejection of service by email."); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (holding that China's Article 10 objection "does not cover service by email"); *WhosHere, Inc. v. Orun*, Civil Action No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (permitting email service because "Turkey has not specifically objected to service by email"); *Sec. & Exch. Comm'n v. China Sky One Med., Inc.*, Case No. 12-CV-07543 MWF (MANx), 2013 WL 12314508, at *2–3 (C.D. Cal. Aug. 20, 2013) (holding that China's article 10 objection does not prevent email service); *Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, Civil Action No. 2:13-CV-458, 2013 WL 1644808, at *1 (W.D. Pa. Apr. 16, 2013) (allowing email service because the court was "not aware of any international agreement or Russian law that prohibits service by email in this instance"); *Fed. Trade Comm'n v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) ("Service by email and Facebook are not among the means listed in Article 10, and India has not specifically objected to them."); *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011) (holding that the court was "justified in permitting" email service because "India did not expressly object to electronic mail as a means of service"); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) ("The Hague Convention does not prohibit service by e-mail or facsimile."); *Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (permitting email service on Portuguese defendant because "it is the method of service most likely to reach defendant").

Many of the cases permitting email service are distinguishable from the present case.[5]  In several cases, the court allowed email service only after the plaintiff attempted to serve process via the Hague Convention.  *See Bazarian Int'l*, 168 F. Supp. 3d at 17; *Sulzer Mixpac AG*, 312 F.R.D. at 332; *WhosHere, Inc.*, 2014 WL 670817, at *3; *China Sky One*, 2013 WL 12314508, at *2–3; *PCCare247 Inc.*, 2013 WL 841037, at *4; *Gurung*, 279 F.R.D. at 220; *Popular Enters.*, 225 F.R.D. at 563.  Other courts permitted email service after the plaintiff established that attempted service through the central authority would not result in successful service.  *See FKA Distrib. Co.*, 2017 WL 4129538, at *2 (finding that "China has been taking up to one year or more to process documents served under the Hague Convention"); *Henry F. Teichmann, Inc.*, 2013 WL 1644808, at *1 (permitting email service on Russian defendant after stating that "the record demonstrates that the Central Authority of the Russian Federation denies all [Hague Convention] requests for service of process originating from the United States").  In yet another case, the court offered little explanation behind its determination that the Hague Convention did not prohibit email service. *MacLean-Fogg Co.*, 2008 WL 5100414, at *2.  Instead, the court merely cited as authority a case where the Hague Convention did not apply because the plaintiff "presented evidence that physical addresses for a number of the named defendants" could not be located.  *See Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, *2 (N.D. Cal. Apr. 17, 2007).[6]

One major underlying assumption undergirds these courts' reasoning allowing email service under the Hague Convention:  a means of service not specifically prohibited under the

---

[5] Of note, most cases permitting email service do so under Federal Rule of Civil Procedure 4(f)(3), which permits service by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. (4)(f)(3). Thus, these courts reason, unless the Convention specifically prohibits email service, a court may authorize such service.

[6] The defendants were located in the Czech Republic, Ukraine, Israel, Switzerland, the Philippines, Norway, Canada, India, and England. *Williams-Sonoma Inc.*, 2007 WL 1140639, at *1. All but two of the countries, India and the Philippines, are signatories to the Hague Convention. *Id.* The court noted that in the case of some defendants, service was incomplete because defendants refused service. *Id.* The court did not distinguish which parties refused service and which defendants' addresses were unknown. *Id.*

Convention must be permitted. While this assumption is addressed more expansively in Section III.B.2, many of the above cases hold that a country must object to each specific method of service it wishes to prohibit, and thus, objections to Article 10 do not incorporate email service. Stated alternatively, if a country objects to service methods under Article 10, but not explicitly to email service, the latter must be permitted. This reasoning, however, fails to account for the express terms of Article 10. Countries, including China, objected to Article 10 of the Convention because, by its clear language, the service methods identified were specifically permitted *unless objected to*. The same cannot be said of email service. There is no reason for a nation to affirmatively object to a service method that is not authorized or identified because the Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc.*, 137 S. Ct. at 1507; *accord Facebook, Inc.*, 2020 WL 5036085, at *5 (noting that "China affirmatively objected to service 'by postal channels' because service 'by postal channels' is expressly permitted by the Convention," but further observing that because the "Convention doesn't offer service by e-mail as an option . . . there was no reason for China to affirmatively object to it").

Because this Court finds unpersuasive other courts' analyses supporting email service based on a signatory's failure to lodge an Article 10 objection to such service, and because an open question remains as to whether an objection to service by "postal avenues" includes service by email, the Court turns to the broader and, in the undersigned's view, more significant question of whether email service is consistent with the intent and provisions of the Convention and is therefore permitted.

## 2. *Email service is inconsistent with the Hague Convention's methods.*

The question of whether email service is consistent with the Hague Convention, at its core, incorporates a more fundamental inquiry: Does the Hague Convention prohibit a means of service that is not explicitly authorized by its terms or, stated alternatively, does it permit modes of service not specifically identified within or sanctioned by its provisions? For the following reasons the Court finds the answer to be "yes" and "no," respectively, i.e., that the Convention "pre-empts inconsistent methods of service" wherever it applies.

Initially, the Court notes that two United States Supreme Court decisions generally support this proposition. In *Water Splash, Inc.*, the Court determined that the Convention neither precludes nor "affirmatively *authorizes* service by mail." 137 S. Ct. at 1513. Rather, "Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not 'interfere with . . . the freedom' to serve documents through postal channels." *Id.* Put differently, "in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Id.* Thus, the only methods of service *authorized* by the Convention are those explicitly mentioned in the text, provided the receiving state has not objected.

*Schlunk* also reiterated that the Convention preempts other inconsistent methods, including "*notification au parquet*," i.e., "permit[ting] service of process on a foreign defendant by the deposit of documents with a designated local official."[7] 486 U.S. at 703. The Court determined

---

[7] "Notification au parquet" originated in France, whereby "[i]f suit was brought by a French court against a non-resident defendant, service of the initial process could be made upon the defendant by leaving a copy for him at the '*parquet*,' the office of the local Procureur-General." Philip Amram, *The Revolutionary Change in Service of Process Abroad in French Civil Procedure*, 2 INT'L L. 650, 650 (1968).

that "the Conference wanted to eliminate *notification au parquet*" even though it is not expressly

mentioned in the final draft.  *Id.*  Finding that the Convention's history, general purposes, and

specific articles show that *notification au parquet* is prohibited (*id.* at 703–05), the Court's

reasoning implies that the Convention may preclude a particular service method even where the

text does not expressly say so.

Several federal district courts have reached this conclusion, i.e., the Convention prohibits

service methods that are not expressly prohibited but are nonetheless inconsistent with the

Convention's authorized processes.  *See, e.g., Facebook, Inc.*, 2020 WL 5036085, at *8 (noting

that "[s]ervice by e-mail on defendants in China is not one of the Hague Service Convention's

approved methods of service" and "[t]hus, unless an exception to the Convention applies, service

by e-mail on the China-based defendants" is prohibited); *Anova Applied Elecs., Inc. v. Hong King*

*Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020) (holding "e-mail service on [China-based]

defendants is prohibited by the Hague Convention"); *CRS Recovery, Inc. v. Laxton*, No. C 06-CV-

7093 CW, 2008 WL 11383537, at *1–2 (N.D. Cal. Jan. 8, 2008) ("An order allowing email service

on a defendant located in China would contravene the [Hague Convention] . . . .").

The Court is persuaded that even if China's objection to service by postal channels does

not in and of itself prohibit email service, such service is nevertheless proscribed by the Convention

because it is inconsistent with the Convention's authorized service methods.  In *Anova Applied*

*Electronics, Inc.*, the court persuasively reasoned that "[t]he Convention's own structure supports

that interpretation."  334 F.R.D. at 471.  As observed by the court, Articles 11 and 19 permit

signatories to consent, either unilaterally or with another party, to means of service not authorized

by the Convention.  Hague Convention art. 11, 19.  Allowing countries to consent to forms of

service not authorized by the Convention would "hardly be necessary" if the Convention

"generally permitted any means of service . . . not explicitly authorized or prohibited by its text." *Anova Applied Electronics, Inc.*, 334 F.R.D. at 471–72. As the Supreme Court has held, the Convention "pre-empts inconsistent methods of service . . . [wherever] it applies." *Schlunk*, 486 U.S. at 699. The court in *Anova Applied Electronics, Inc*. ultimately concluded that "[t]o permit service by e-mail would bypass the means of service set forth in the Convention." 334 F.R.D. at 472 (citing *Luxottica Grp. S.p.A.*, 391 F. Supp. 3d at 827). This Court therefore determines that email service is not permitted under the Convention because it is inconsistent with and not authorized by the Convention's delineated service methods.

### 3. *Chinese Rules of Civil Procedure require service under the Hague Convention to include a translated copy in Chinese.*

Chigo raises one final issue related to Convention service: Prem failed to "include a Chinese translation of the documents."[8] Def.'s Br. 13. As Chigo correctly notes, China requires documents served under the Convention to either be written in Chinese or translated into Chinese.[9] *Id*. at 13–14. Article 5 of the Convention authorizes the Chinese Central Authority to "require the document to be written in, or translated into, the official language or one of the official languages of the State addressed." Hague Convention art. 5. In response, Prem alleges "Chigo's assertion that it is somehow prejudiced by not receiving the documents in Chinese is a failing argument considering Chigo has ample opportunity to have the documents translated if it so desires." Pl.'s Br. 16. While it may be true that Chigo has had sufficient time to translate the documents, that

---

[8] Chigo does not use Prem's failure to do so as evidence of insufficiency. Rather, Chigo alleges that Prem not providing a Chinese translation prejudiced Chigo. The Court considers the lack of a translated copy as an allegation of insufficient service under the Convention.

[9] *See* Hague Conference on Private International Law, China – Central Authority & Practical Information, https://www.hcch.net/en/states/authorities/details3/?aid=243 (last visited Sept. 28, 2020).

does not negate the fact that Prem failed to comply with the Convention's requirements. For this reason, Prem's service again falls short of satisfying the dictates of the Hague Convention.

## C. Remedy[10]

Chigo asks the Court to dismiss all claims with prejudice, or in the alternative, quash service and impose a deadline whereby Prem must execute service. Def.'s Br. 14. Prem asks the Court to, at most, "quash the service, not dismiss the case, and not set a time deadline for service." Pl.'s Br. 16. The undersigned recommends that Prem be required to serve Chigo pursuant to the Hague Convention within a finite time.[11] If Prem cannot execute service within the Court's timeframe, the undersigned recommends dismissal without prejudice unless Prem can show good cause for the delay.

### 1. Service under the Federal Rules of Civil Procedure

Service in a post–removal federal case is governed by the Federal Rules of Civil Procedure. *See Perez*, 2006 WL 1788182, at *2; Fed. R. Civ. P. 81(c)(1). Prem's next attempt at service will need to comply with Rule 4(f), which governs service on foreign defendants. Fed. R. Civ. P. 4(f). That Rule authorizes the following three methods of service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice[;] . . . or (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)–(3). The first "gives effect to the Hague Convention"; the second "provides options to the party serving process when internationally agreed process methods are not intended

---

[10] Because the Hague Convention dictates the terms of service in this matter, the Court need not examine whether Prem's attempts at service satisfied Texas law.

[11] So long as Prem has completed all necessary requirements on its end, the Court will not fault Prem for any delays caused by China's Central Authority.

to be exclusive or when no international agreement is applicable, as would be true, for example, when service is to be made in a nation that is not a signatory to the Hague Convention"; and the third "serves as a safety valve for unanticipated situations." 4B Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1133 (4th ed. 2020). For the reasons already detailed above, Prem must fulfill the requirements of Rule 4(f)(1), i.e., service under the Hague Convention, because China is a signatory to the treaty and Prem seeks to transmit judicial documents abroad. *See L.K. ex rel. Yarborough v. Mazda Motor Corp.*, Civil Action No. 3:09–cv–469–M, 2009 WL 1033334, at *2 (N.D. Tex. Apr. 15, 2009) (holding that, under Rule 4(f)(1), service of Japanese defendant must comply with the Hague Convention).

### 2. *Prejudice*

Further, Chigo has not demonstrated it suffered actual prejudice due to Prem's inadequate service—it merely alleges, in a conclusory fashion, that it was "directly prejudice[d]" by the lack of a Chinese translated Complaint. Def.'s Br. 13–14; *see also L.K. ex rel. Yarborough*, 2009 WL 1033334, at *2 (denying motion to dismiss under Rule 12(b)(5) because defendant failed to show that it "suffered hardship because of Plaintiffs' failure to satisfy the requirements of the Hague Convention"). At this stage, there is no evidence to suggest that Chigo has experienced hardship, nor that it will encounter undue hardship, if Prem is given the opportunity to re-attempt proper service.

The Court is aware of the difficulties Prem would have faced had it attempted service in China during the height of the COVID-19 pandemic. Prem contends that email service was "the most reasonably calculated option for service during the" crisis. Pl.'s Br. 17. The pandemic does not, however, excuse Prem's failure to comply with the Hague Convention. Prem should be required to attempt service through the methods set forth in the Convention, including, if

necessary, the provisions for service in "case[s] of urgency." *See* Hague Convention art. 15. If

Prem cannot serve Chigo within the required time and upon showing good cause, Prem may then

ask the Court to enter "any provisional or protective measures." *Id.*

### 3. Timeframe for service

Federal Rule of Civil Procedure 4(m) instructs that a plaintiff must serve the defendant

"within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). This provision, however, "does

not apply to service in a foreign country under Rule 4(f) . . . ." *Id.* Interpreting the time limits for

foreign service under Rule 4, the Fifth Circuit has stated:

> Because "district courts need to be able to control their dockets," Rule 4(f)
> authorizes a without-prejudice dismissal when the court determines in its discretion
> that the plaintiff has not demonstrated reasonable diligence in attempting service
> . . . . Though we do not insist that foreign service always be the first step, or that it
> be attempted within the first 120 days, in some cases that will be the only reasonable
> course. Good faith and reasonable dispatch are the proper yardsticks.

*Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012) (citing *Nylok Corp. v. Fastener World Inc.*,

396 F.3d 805, 807 (7th Cir. 2005)) (interpreting previous 120-day limit).[12] The evidence suggests

Prem exercised "good faith and reasonable dispatch" in attempting service thus far. Accordingly,

the district judge should not dismiss Prem's Complaint due to failure to diligently pursue service.

*See Charles v. Sanchez*, EP-13-CV-00193-DCG, 2013 WL 12087219, at \*5 (W.D. Tex. Aug. 5,

2013) ("In most instances where a foreign defendant has not been served in compliance with the

---

[12] Chigo also generally alleges prejudice based on the delay in Prem achieving valid service. Neither Rule 4(m) nor existing case law authorizes dismissal with prejudice at this juncture due to the Prem's current inability to complete service. As acknowledged by Chigo, the 90-day window provided by Rule 4(m) does not apply to service under the Hague Convention. *See Lozano*, 693 F.3d at 488. Moreover, while "courts have been known to utilize other rules, such as Rule 16(f) (providing sanctions for failing to comply with a court order, including dismissal) and Rule 41(b) . . . to dismiss actions with prejudice when the plaintiff failed to effect service pursuant to Rule 4(m)" 4B Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1137 (4th ed. 2020) (footnote omitted), dismissals with prejudice are generally reserved for more flagrant violations. *See Bann v. Ingram Micro, Inc.*, 108 F.3d 625, 627 (5th Cir. 1997) ("Dismissal with prejudice is a drastic remedy to which a court may resort only in extreme situations where there is a clear record of delay or contumacious conduct by the plaintiff."). The record presently before the Court does not demonstrate such conduct by Prem.

Hague Convention, the favored remedy is to allow the plaintiff the appropriate time to properly serve the defendant."). Instead, the Court should impose a time requirement for service.

In *Charles*, a case with a similar procedural posture, the court ordered the plaintiff to (1) file a status report within 53 days of the order, and (2) properly serve the defendant within 80 days of the order. *Id.* at *5–6. By contrast, in *L.K. ex rel. Yarborough*, the court ordered the plaintiff to serve the Japanese defendant within 16 weeks. 2009 WL 1033334, at *2. In light of the ongoing global pandemic, the undersigned recommends the following deadlines: (1) service under the Hague Convention within 20 weeks; (2) filing a status update within 90 days informing the Court of Prem's progress and any anticipated delays in executing service.

## IV.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **DENY** the pending Motion to Dismiss. ECF No. 5. Specifically, the undersigned recommends that the district judge: (1) quash Prem's attempted service; (2) order Prem to immediately commence efforts to serve Chigo under the Hague Convention, in accordance with Federal Rule of Civil Procedure 4(f)(1), to accomplish service within 20 weeks of the date of any order adopting this FCR, and file a status update within 90 days of that same order; and (3) in the event that Prem is not able to complete service within the designated timeframe, order Prem to submit evidence to the Court explaining the delay and establishing good cause for additional time. The undersigned recommends dismissal without prejudice if Prem fails to comply with these requirements.

## V.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 29, 2020

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**